**MARCUS v. OTIS et al.**

No. 257, Docket 20969.

Circuit Court of Appeals.
Second Circuit.
Aug. 12, 1948.

For former opinion, see 168 F.2d 649.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

Abraham Marcus, of New York City, for plaintiff-appellee.

Samuel Marion, of New York City, for plaintiffs-intervenors.

Spence, Hotchkiss, Parker & Duryee, of New York City (Kenneth M. Spence, Julius J. Teller and Thomas L. Howe, all of New York City, of counsel), for defendants-appellants Otis, Franklin, Hutchinson and Harrison.

Charles L. Sylvester, of New York City, (Robert P. Patterson, Sidney G. Kingsley and Ambrose L. Cram, all of New York City, of counsel), for defendants Eugene A. Tracey and Marie L. Tracey.

AUGUSTUS N. HAND, Circuit Judge.

No ground has been shown for a reconsideration of our holding in the prior opinion by Judge L. Hand that defendants' liability is based upon a misappropriation of corporate funds and not upon a conversion of stock of Majestic acquired by Automatic and then converted by the defendants. However, the award to Automatic of profits realized by defendants upon the stock of Majestic purchased with the corporate funds, as provided for in the opinion of Judge Augustus N. Hand in which Judge Chase has concurred, should be made more specific with reference to certain questions raised by the petitions for rehearing.

The first of these questions relates to the method to be adopted for computing profits on 41,500 shares of the 71,500 shares sold by Mrs. Tracey. On the remaining 30,000 shares which she sold we have already held in the prior opinion of Judge L. Hand that her liability is $1.05 per share, that is to say, the difference between her purchase price of $1.20 per share and the average purchase price of $2.25 under the two options which Mr. Tracey surrendered in the transaction. Her profit on the 41,500 shares should be computed upon the basis of the average profit per share made by Mrs. Tracey on the sale of all her shares, and not as plaintiffs contend by selecting the 41,500 shares which she sold at the greatest profit as the measure of her liability. It is impossible to identify any of the 71,500 shares as belonging to either group. We must therefore proceed on some more theoretical and equitable basis. The purpose of requiring the payment of profits realized by the de-

fendants is to prevent them from benefiting by their wrongful use of corporate funds and is not intended to impose any further penalty. We think that this purpose is accomplished by computing the profits on the 41,500 shares in the manner indicated above. The situation is analogous to one where a wrongdoer mingles his own funds with other funds which he has misappropriated. In such a case he is liable only for a proportionate part of the profits realized based upon the ratio of the amount of money misappropriated to the original commingled mass. Scott on Trusts, § 517.2; Restatement of Trusts, § 202(h) (i); Restatement of Restitution, § 210(d). Indeed, this basis resembles the one used in a schedule of profits presented by defendants which the parties stipulated to be "competent proof of the profits realized by the individual defendants." See Defendants' Exhibit Y and Plaintiffs' Exhibit 1. The decision of this court in Smolowe v. Delendo Corporation, 2 Cir., 136 F.2d 231, 148 A.L.R. 300, certiorari denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446, relied on by the plaintiffs dealt with the interpretation of Section 16(b) of the Securities Exchange Act of 1934 which was designed to prevent speculation by a director in the stock of his own company under circumstances where the particular information he was likely to have afforded him an unfair advantage in trading. In our opinion this decision does not apply to the situation we are here dealing with.

■ The second problem arises from the fact that certain of the defendants appear to have retained some of the stock acquired through improper use of corporate funds which is now worth less than the amount for which they purchased it. The plaintiffs contend that these defendants should restore to Automatic any profits they made on shares sold without reference to whether, because of a drop in value of stock unsold, their transactions as a whole have resulted in a loss or smaller net gain. But, if as to a particular defendant, plaintiffs wish to go beyond restoration of the principal and interest which they have already received and to impose a constructive trust upon the product of the money misappropriated, the shares remaining unsold are as much a part of the product as the proceeds of the shares sold and must be taken into account in computing gain or loss. This is in accordance with the view expressed in Scott on Trusts, § 213, that if breaches of trust are not separate and distinct a trustee is accountable only for the net gain or chargeable only with the net loss. Thus, in the present case each defendant should be held liable only for the net profit actually realized by him upon his single misappropriation of corporate funds. The plaintiffs may elect in case of each defendant whether or not they desire to impose a constructive trust on the product of the misappropriated money, and where they so elect the profits realized on the stock sold should be offset to the extent of any losses on the defendant's unsold stock. The reference by plaintiffs to the Restatement of Torts, §§ 747, 748, regarding trade mark and unfair competition cases in which a defendant is not permitted to credit himself with losses sustained on some of his sales is not applicable to the case at bar since that doctrine is based upon the existence of a separate tort arising out of each wrongful sale, whereas here there was but a single wrong by each consisting of a misappropriation of corporate funds.

■ The final point to be considered is that of interest which the plaintiffs claim should be allowed upon the profits. We, however, do not believe that such interest should be awarded in this case. There can be no doubt that the defendants as part of their net profits are bound to account for any dividends received by them on the Majestic stock and also for any other gains and income they may actually have realized through reinvestment or otherwise. However, upon funds from which they received no provable gain in our opinion the court should not award interest. This will probably include the funds deposited in escrow for there has been no suggestion that bank interest was allowed on the escrow deposit. The whole theory upon which we awarded profits was to prevent the defendants from benefiting by their own wrongs and not as recompense for any

loss suffered by the corporation which has already been repaid the principal amount misappropriated with interest. This distinguishes the case from decisions awarding interest upon damages recovered by a plaintiff.

As thus clarified the opinion of Judge Chase and myself is reaffirmed.